**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**CHERYL D. FORSYTHE**                                                    **PLAINTIFF**

vs.                                                        **CIVIL ACTION NO. 3:14CV268-SAA**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security Administration**          **DEFENDANT**

**MEMORANDUM OPINION**

Plaintiff Cheryl D. Forsythe appeals a decision by the Commissioner of Social Security denying her application for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act. Plaintiff protectively applied for disability on November 12, 2011, alleging disability beginning on July 1, 2011. Docket 7, p. 134-35, 150. Her claim was denied initially on January 4, 2012, and on reconsideration on February 21, 2012. *Id.* at 77-80, 85-87. She requested a hearing (*id.* at 88) and was represented by counsel at the hearing held on September 12, 2013. *Id.* at 33-74. The ALJ left the record open for two weeks so the plaintiff could obtain and submit a Medical Source Statement from her treating physician, Dr. Flannery, that would explain why plaintiff's limitations are more severe than the medical records indicate. The Administrative Law Judge (ALJ) issued an unfavorable decision on November 8, 2013 (*id.* at 16-29), and the Appeals Council denied plaintiff's request for a review on December 31, 2014. *Id.* at 1-3. Plaintiff timely filed this appeal from the ALJ's most recent decision under 42 U.S.C. § 405(g), and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

# I. FACTS

Plaintiff was born on July 12, 1962 and has a high school education. Docket 7, p. 39. She was forty-nine years old at the time of her application and fifty-one years old at the time of the hearing. Her past relevant work was as a retail clerk, detention officer, machine cutter, and packager. *Id.* at 68-69. Plaintiff contends that she became disabled before her application for disability as a result of myasthenia gravis, stroke, diabetes type 2 and paralyzed nerve in her left eye. Docket 7, p. 154. The ALJ determined that plaintiff suffered from "severe" impairments of "myasthenia gravis, history of stroke, obesity and diabetes mellitus" (Docket 7, p. 21), but that her impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525, 404.1526). *Id.* at 24.

Based upon testimony by the vocational expert [VE] at the hearing, and after considering the record as a whole, the ALJ determined that plaintiff retains the Residual Functional Capacity [RFC] to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently. She can sit for a total of 6 hours in an 8-hour day and stand/walk for a total of 6 hours in an 8-hour day with normal breaks. . . .

Docket 7, p. 25. During the hearing, the VE testified that plaintiff would not be able to perform her past relevant work. Although he identified several jobs a person with the above RFC could perform, he stated that if that person were required to use a cane to ambulate effectively and to stand, she could not perform any of the jobs that he had identified in response to the ALJ's hypothetical questions based on the RFC. Docket 7, p. 70-71. Upon further analysis under applicable rulings and regulations, the ALJ determined that plaintiff was less than fully credible

in describing the intensity, persistence and limiting effects of her claimed symptoms, limitations and subjective complaints. *Id.* at 26. At steps four and five the ALJ rejected her claims of disability, concluding that even though the plaintiff has severe impairments and cannot perform her past relevant work, there nevertheless are jobs which exist in significant numbers in the national economy which plaintiff can perform. Consequently, she found plaintiff was not disabled.

Plaintiff claims that the ALJ erred by reaching a flawed residual functional capacity ("RFC") and by not giving proper weight to her treating physician's opinion or re-contacting him to clarify the alleged evidentiary conflicts. Docket # 11.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is

---

[1] *See* 20 C.F.R. §§ 404.1520 (2012).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. §§ 404.1520(b) (2012).

[4] 20 C.F.R. §§ 404.1520(c) (2012).

3

disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even

---

[5] 20 C.F.R. §§ 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2011).

[6] 20 C.F.R. §§ 404.1520(e) (2012).

[7] 20 C.F.R §§ 404.1520(g)(2010).

[8] *Muse*, 925 F.2d at 789.

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

4

if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

**A. Was the RFC supported by substantial evidence?**

Plaintiff argues that the ALJ's RFC was not supported by substantial evidence because no first-hand medical opinions contradict Dr. Flannery's opinion requiring plaintiff to use a cane. Docket 11, p. 13. Plaintiff notes that the only state agency reports are from non-examining physicians, none of whom had the benefit of Dr. Flannery's MMS or his letter explaining plaintiff's limitations. *Id.* The Commissioner counters that all of the physical examinations conducted by both Dr. Flannery and Dr. Harrington "consistently show normal gait, normal

---

[10]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

5

range of motion, and normal muscle strength; and none of the physical examinations support Plaintiff's alleged limitations on her ability to stand or walk." Docket 12, p. 8.

The responsibility for determining the plaintiff's RFC belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), but in doing so he must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). An ALJ may not establish physical limitations or the lack of such limitations without medical proof to support that conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 172 F.3d at 35.

Reading the record as a whole, the undersigned concludes that the ALJ thoroughly analyzed plaintiff's credibility, including her statements concerning her inability to balance and need for a cane to prevent falls. The ALJ considered Dr. Flannery's MMS, which indicated a need to use a cane, but she went on to thoroughly review and discuss Dr. Flannery's medical records, noting that nothing in those records or his objective findings provides any support for the his statement in his report that plaintiff should use a cane. Docket 7, p. 23. She noted that despite plaintiff's testimony that she needs a cane, plaintiff was "deemed capable of performing exercise. Plaintiff demonstrated full range of motion and strength in all extremities." *Id.* In her opinion, the ALJ discussed multiple office visits where the records specify that plaintiff exhibited "normal gait, normal neurological function, normal ranges of motion and normal

6

strength in all extremities." *Id.* Further, the ALJ noted that Dr. Flannery's MMS indicated that plaintiff gets weaker as the day progresses, but plaintiff's own testimony contradicted this statement. Because the ALJ was primarily responsible for resolving the conflict in the testimony and the medical evidence, and because the medical evidence as a whole supports the ALJ's RFC, plaintiff's assignment of error is without merit.

**B. Did the ALJ properly consider the opinions of plaintiff's treating physician?**

Plaintiff contends that the ALJ's ultimate opinion was not supported by substantial evidence because the ALJ should have given her treating physician's opinion more weight or re-contacted her treating physician to clarify plaintiff's need to use a cane. Docket 11, p. 14-18. The question of whether plaintiff requires the use of a cane to ambulate determines whether plaintiff is disabled as the VE testified that a person who must use a cane could not perform any of the jobs identified as available at the hearing. Docket 7, p. 70-71. Plaintiff challenges the ALJ's reliance upon the absence of a prescription for a cane in Dr. Flannery's records (Docket 11, p. 16; Docket 7, p. 26) even though Dr. Flannery's Medical Source Statement remarked that plaintiff needs to use a cane when standing/walking. Docket 7, p. 325. Plaintiff asserts that once the ALJ determined there was a conflict between Dr. Flannery's Medical Source Statement and the medical records, "the ALJ had a duty to contact Dr. Flannery since she felt his letter and Medical Source Statement did not satisfy her request that he explain why his medical records, in her view, did not match his Medical Source Statement." Docket 11, p. 16.

However, as noted by the Commissioner, the ALJ did not need to re-contact the treating physician to clarify whether plaintiff had a medical or physical need to use a cane to walk because the Social Security Regulation that required an ALJ to re-contact a physician, 20 C.F.R.

§ 404.1512(e), has been repealed and removed from 20 C.F.R. § 404.1512.  Plaintiff's argument that the ALJ was required to re-contact Dr. Flannery is without merit.  The ALJ properly discounted Dr. Flannery's opinions because they were not supported by objective, clinical evidence.

An ALJ has discretion to afford lesser weight to a treating physician's medical opinions, but to do so properly she must "perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."  *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  The ALJ did so in this case.  *Martinez v. Chater*, 64 f.3d 172, 176 (5th Cir. 1995) established that "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantive evidence."  However, this is not a case where the treating physician's opinion is consistent with clinical and laboratory diagnostic techniques.  Instead, it is quite the opposite.  Dr. Flannery submitted a Medical Source Statement that plaintiff must have a cane to stand and walk.  Docket 7, p. 323-29.  However, the need to utilize a cane is not supported by any clinical or laboratory diagnostic techniques and is neither supported by or otherwise mentioned in Dr. Flannery's own medical records.  On the day that plaintiff specifically asked Dr. Flannery for a cane, he still did not write plaintiff a prescription for one.  Docket 7, p. 310.  His records consistently note normal gait, normal strength and even that plaintiff has the ability to exercise.  Because Dr. Flanery's opinion regarding the cane was not supported by any clinical findings, laboratory findings or any other evidence in the record including even a single notation, the ALJ properly chose not to afford the opinion controlling weight.  Therefore, this argument is without merit.

## IV.  CONCLUSION

After diligent review, the court holds that the ALJ's decision was supported by substantial evidence and must be affirmed.  A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 20th day of August, 2015.

                                               /s/ S. Allan Alexander
                                               UNITED STATES MAGISTRATE JUDGE